JOHN S. COVINGTON, Judge.
Defendant, Robert E. Johnson, was charged by bill of information with armed robbery in violation of La.R.S. 14:64. After jury trial, by an eleven to one vote, he was convicted of the lesser included offense, attempted armed robbery. The trial judge imposed a sentence of nine years at hard labor, without benefit of parole, probation, or suspension of sentence.
After the jury had been impaneled, but prior to production of evidence on the merits, the prosecution made known possibly exculpatory evidence which should have been revealed in answer to a question in defendant's motion for discovery pursuant to La.C.Cr.P. art. 718. The prosecution announced it had just learned, during the noon recess, that the victim and only witness to the crime inadvertently saw defendant at the police station and identified him as the armed robber prior to identifying him in a lineup. The prosecution asserted that this information was not exculpatory and sought to amend its discovery answers so as to be allowed to introduce the inadvertent identification as evidence, as well as to more fully comply with defendant’s discovery motion.
Defense counsel orally moved to suppress all identification, i.e. inadvertent, lineup and in-court identification by the victim, alleging that the circumstances produced a totally unreliable identification. In the alternative, defense counsel moved that, at least, the prosecution not be allowed to introduce into evidence the inadvertent one-on-one identification because such information was completely new and he had not prepared any defense against it.
The trial court deferred ruling until after a hearing conducted out of the jury’s presence. Defendant’s alternative motion was granted. The prosecution’s motion to amend its discovery answers or to be allowed to introduce the inadvertent identification as evidence was denied.[1] The trial court, however, on the basis that the likelihood of misidentification was not present, did rule that the victim would be permitted to make an in-court identification.[2]
Defendant asserts four assignments of error:
1. Because of error patent on the face of the record, the conviction should be reversed.
2. There was not sufficient evidence for a rational trier of fact to find guilt beyond a reasonable doubt.
3. The sentence is excessive.
4. The trial court erred in not suppressing the in-court identification of the defendant by the victim.
Defendant failed to brief the first three assignments of error as required by Uniform Rules — Courts of Appeal, Rule 2-12.-4; and, accordingly, they are considered abandoned.
FACTS:
In Bogalusa, on November 5, 1983, at 11:15 p.m., sixteen year old Michael A. Brumfield was parked at a closed gas station, with his windows down and radio on, awaiting his date who was a patron at a nearby bar. Young Brumfield noticed a black man, who wore a dark leather hat and jacket, walking along the street towards the gas station and away from nearby Charity Hospital, where, trial testimony shows, a police officer had noticed a person fitting the same description lingering in the parking lot earlier at 11:00 p.m. Michael observed the man stop at a nearby car and *863 apparently converse with the occupant, but did not notice him again until after he crossed the street. The man approached Michael’s car window, asking for a light for a cigarette. They conversed for nearly fifteen minutes, with the man asking if he had some gin or marijuana and complaining about the lack of money to pay the rent, before Michael saw his father pull up at a caution light. He then told the man he wanted to leave and catch up with his father.
The man immediately told Michael he was not going anywhere, pulled out a snub nose, silver colored pistol, and demanded all of Michael’s money. As the man was gathering the money from Michael’s wallet, which amounted to $18.00, the latter attempted to jar the pistol from the culprit’s hand by shoving it against the windshield, but Michael was quickly subdued. The offender then put the gun to Michael’s temple and told him if he moved he was dead. Moments later, he advised Michael he had five minutes to get away.
Michael made a quick U-turn at the nearby caution light and started toward the robber with the hope and anticipation of running him down. However, he changed his mind after seeing the man had kneeled behind a sign and leveled the pistol at him, and so he drove off. Just around the block, in front of a popular night spot, he saw Bogalusa Police Captain Ernie Wells, stopped and informed him of the robbery.
Early the next morning, at approximately 1:50 a.m., Captain Wells and another officer stopped defendant for improper lane usage and a possible DWI violation. As defendant got out of his car, Captain Wells noticed a bottle of gin and a chrome plated snub nosed revolver on the floorboard. Furthermore, he noticed defendant was black, that he wore a dark leather hat and jacket, and that he otherwise fit the general description Michael had given of the robber. Defendant was taken to police headquarters for questioning and to take part in a lineup.
Michael was called and asked to come to the police station for the purpose of viewing a physical lineup. When Michael arrived, at two o’clock a.m., Captain Wells discovered that the duty chief did not have the keys to the lineup room. He met Michael outside, in front of the police station, where he advised him the lineup would be held later and asked further questions about the robbery. The police station is new and its facade is of tinted but transparent glass. From that location and through the glass Michael saw defendant inside the police station, in an office, talking with police officers. Defendant was apparently about to leave the station. Michael informed Captain Wells that defendant, the man he saw through the glass, was the same man who had robbed him.
Captain Wells neither confirmed nor denied Michael’s assertion; he simply told Michael he did not want a one-on-one identification, but rather an identification made from a lineup. A lineup, consisting of five (5) persons, was held hours later that day, sometime between 9:00 a.m. to 12:30 p.m. At the lineup Michael again identified defendant as the robber.
ASSIGNMENT OF ERROR NO. 4:
Defendant argues the trial court erred by not granting the motion to suppress the in-court identification by the victim, Michael Brumfield, for it’s unreliability. The defense asserted that the circumstances of the inadvertent identification were so highly prejudicial as to render that identification unreliable; consequently, no future identification by Michael should be considered as credible because he could hardly be expected to change his mind after identifying defendant at the police station just a few hours subsequent to the late night robbery. The pertinent facts which defendant notes are: (1) the young age of Michael; (2) the late hour when the inadvertent identification was made; (3) the nervous state of Michael because of the nearness of time from the robbery to the identification, and (4) that defendant was the only black man within the visible area of the front of the police station at the time the identification was made.
*864 To determine whether the ruling on defendant’s motion to suppress was correct, we are not limited to the evidence adduced at the hearing but may consider all pertinent evidence given at trial. State v. Beals, 410 So.2d 745 (La.1982).
Louisiana jurisprudence holds that a defendant attempting to suppress an identification must prove two things: 1) that the identification was suggestive, and 2) that there was a likelihood of misidentification in the identification procedure. See State v. Chaney, 423 So.2d 1092, 1098 (La.1983) and cases cited therein.
Even if we assume the inadvertent identification was tainted, this does not, per se, render inadmissible the in-court identification if there was an adequate independent basis therefor. It is not merely a suggestive identification procedure which violates due process, but the likelihood of misidenti-fication. See State v. Dixon, 457 So.2d 854 (La.App. 1st Cir.), writ denied, 462 So.2d 191 (La.1984).
In Dixon, this court stated that there are five factors in determining whether an in-court identification is reliable and independent of a possibly tainted pre-trial identification: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness’ degree of attention; 3) the accuracy of the witness’ prior description of the criminal; 4) the level of certainty demonstrated by the witness; and 5) the length of time between the crime and the confrontation.
The opportunity to view. Testimony adduced shows that Michael was parked near a street lamp, thus lighting was sufficient for him to be able to view the robber. They were within a few feet of each other while conversing amiably for approximately fifteen minutes prior to the offense. The victim had an excellent opportunity to observe the robber.
The degree of attention. Michael, who was awaiting his date, and the robber were alone and talking to each other for about fifteen minutes. The logical conclusion is that Michael's degree of attention was very high.
The accuracy of the description. Testimony demonstrates that Michael, almost immediately after the incident, described to Captain Wells the armed robber’s facial features, (including a facial scar) wearing apparel, and the pistol he used. Based upon those descriptions, Captain Wells, who later stopped defendant for traffic violations, brought him to the police station for questioning and to participate in a physical lineup.
The level of certainty. Michael positively and unequivocally identified the defendant as the man who robbed him; he remained steadfast notwithstanding adroit cross-examination.
The time between the crime and the confrontation. The robbery occurred on November 5, 1983, at approximately 11:30 p.m., and Michael made the inadvertent one-on-one identification of Johnson at 2:00 a.m. the following morning, some two and one half hours later, and picked him out of a physical lineup several hours later. The trial was held a little more than five months later, on March 19, 1984. Thus, the time factors involved were not extensive.
Based upon consideration of the above factors, we find that the victim’s in-court identification was independent of the inadvertent identification and is thus reliable. There is no substantial likelihood Michael mis-identified Johnson.
The assignment of error is without merit. DECREE:
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.

. Defense counsel, while cross-examining a witness at trial, effectively introduced testimony concerning the inadvertent identification.

. The record reflects that the trial court in its ruling specifically addressed the admissibility of the inadvertent and in-court identifications but failed to address the admissibility of the lineup. However, the record further reflects that the defendant raised no objection thereto. Further, the trial court, in granting defendant’s alternative motion not to allow the prosecution to submit the inadvertent identification, did not state that the circumstances surrounding the one-on-one identification were suggestive, but rather that such information should have been given to defendant in response to his discovery request. We find, from the totality of the circumstances, that the inadvertent identification was not unduly suggestive.