526 So.2d 1374 (1988)
STATE of Louisiana
v.
Eugene JONES.
No. KA 87 1597.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*1375 Bryan Bush, Dist. Atty., Baton Rouge by Robert Piedrahita, Asst. Dist. Atty., for plaintiff/appellee.
Walton J. Barnes, II, Zachary, for defendant/appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
Eugene Jones was charged by bill of information with possession of cocaine, a violation of La.R.S. 40:964 and 40:967. A jury returned the responsive verdict of guilty of attempted possession of cocaine. He was sentenced to serve two and one-half years at hard labor. The trial court suspended the sentence and placed defendant on active, supervised probation for five years, with several special conditions. He appealed, urging eight assignments of error, as follows:
1. Physical evidence seized during a search of his hotel room should have been suppressed.
2. The trial court erred by restricting his voir dire examination of a prospective juror.
3. The trial court erred by requiring that defendant exercise his peremptory challenges at the same time as the state.
4. The court erred by failing to excuse a potential juror.
5. The trial court erred by overruling a defense objection to the relevance and admissibility of evidence by a state witness.
6. The trial court erred by permitting the state to introduce drug paraphernalia.
7. The trial court erred by denying defendant's motion for a mistrial.
8. The trial court erred by instructing the jurors on the legal concept of dominion or control.

FACTS
Defendant was arrested at the Regal 8 Motel in Baton Rouge, Louisiana. The arrest resulted from information provided by employees of the motel, who notified the Baton Rouge City Police that one of the motel guests was behaving in an unusual manner. The manager, Patricia Lynn Fazio Soule, discussed defendant's behavior with Officer Stanley James Bihm of the Baton Rouge Police Department when he stopped by the motel while on routine patrol. Ms. Soule was concerned because defendant, who had checked out of the motel the previous day, became irate when the management told him he would not be allowed to occupy the same room when he checked back into the motel. Ms. Soule was also concerned because the switchboard operator had reported that an extraordinarily large number of telephone calls had been placed from the room defendant occupied on his previous stay, many of which resulted in toll charges to the motel. According to Ms. Soule, the night operator had also reported that, during his previous stay, defendant received a substantially larger than average number of incoming calls. The operator noticed the number of calls because many of them occurred during the late night hours when the switchboard was not busy. By the time Ms. Soule talked to Officer Bihm, defendant had placed a large number of calls from his second room; in fact, the management had twice requested defendant to pay a deposit in order to maintain his telephone service.
*1376 Officer Bihm testified that he had previously been involved in a narcotics investigation concerning defendant's brother, and he recognized defendant's name because of that investigation. Officer Bihm called Officer David Whatley, also of the Baton Rouge Police Department, and requested assistance at the motel. Officer Whatley and Officer John Boscoe of the narcotics division of the Baton Rouge Police Department joined Officer Bihm at the motel. Officer Boscoe also recognized defendant's name in connection with a previous narcotics investigation. After talking to several motel employees, the three police officers decided to watch defendant's activities for a short time.
Officers Whatley and Boscoe rented a room at the motel across from the room defendant occupied. Over the next several hours, they watched defendant admit several other persons to the room. From time to time, defendant opened the door and used it to fan the room. On two different occasions, the officers watched defendant throw paper or plastic bags into a large outdoor trash can. The officers recovered the items thrown into the container by defendant, which were the only objects in the receptacle. Officer Whatley discovered a white, powdery residue in a plastic bag deposited by defendant. He performed two field tests on this substance, one designed to reveal traces of amphetamines and the other to reveal traces of cocaine. The substance tested positive for cocaine.
After obtaining the test results, Officer Whatley left the motel and secured a warrant to search the room while Officer Boscoe continued the surveillance. A search conducted after Officer Whatley returned with the warrant revealed traces of suspected cocaine in the room, as well as drug paraphernalia and other items apparently being used in the preparation of drugs for consumption and packaging. Defendant was arrested for possession with attempt to distribute cocaine. He was later charged with simple possession of cocaine.

ADMISSION OF PHYSICAL EVIDENCE
By assignment of error number one, defendant complains that the court erred by permitting the state to introduce the items seized during the search of his motel room. He contends that the motel employees violated his right to privacy by monitoring the number of telephone calls made from his room and by reporting his activities to the police. He submits, therefore, that the evidence uncovered in the search should have been suppressed because it was discovered as the result of an unconstitutional invasion of privacy.
Defendant filed a pre-trial motion to suppress this evidence in which he urged the same grounds. The trial court granted the motion, ruling that the interception of the telephone calls was an invasion of privacy proscribed by La. Const. Art. 1, Sec. 5. Thereafter, the State filed an application for supervisory writs with this Court, seeking review of the trial court's ruling. We granted the State's application, finding that the actions of the motel employees did not constitute a search. Citing State v. Gentry, 462 So.2d 624 (La.1985), we further noted that the rule requiring the suppression of evidence illegally seized was intended to restrain governmental authorities, not private individuals.
Although a pretrial determination of the admissibility of evidence does not absolutely preclude a different decision on appeal, judicial efficiency demands that this Court accord great deference to its pretrial decisions unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result. See State v. Johnson, 438 So.2d 1091, 1104-1105 (La.1983). See also State v. Humphrey, 412 So.2d 507, 523, on rehearing, (La.1982).
On appeal, defendant essentially admits that the seizure of evidence by private individuals is not necessarily unconstitutional. He contends, however, that an invasion of privacy by an individual should be reviewed under a stricter standard than that by which a search or seizure is evaluated.
La. Const. Art. 1, Sec. 5, provides as follows:

*1377 Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
We have found no authority for defendant's argument that an invasion of privacy should be considered a greater intrusion than a search or seizure. We note that, as a practical matter, an invasion of privacy is less likely to encroach upon the personal interests of its subject than an unreasonable search or seizure. The particular intrusion involved herein did not substantially invade defendant's privacy. Moreover, defendant chose to indulge his habit in public accommodations. He was well aware that the motel maintained records of outgoing calls in order to charge the costs to the room. Further, defendant was also aware or should have been aware that his incoming calls were routed to his room by a switchboard operator, and that this person was in a position to note unusual activity such as the fact that defendant received several telephone calls in late-night hours when telephone activity was uncommon. Thus, defendant's actions and choice of accommodations do not demonstrate a particular concern on his part to maintain the privacy of the number of telephone calls he made and received.
Moreover, testimony by the motel employees clearly established that the motel had a substantial pecuniary interest in the number of telephone calls originating from the motel room because the motel bore the ultimate responsibility of paying the toll charges.[1] The motel employees also had an interest in protecting the safety and property of the other guests, as well as the motel's property and reputation. Thus, they were understandably concerned about defendant's abnormal behavior when he was told that he could not rent the same room he had checked out of earlier in the day, particularly in light of the unusual amount of telephone acitvity connected with the two rooms in which defendant stayed. Ms. Soule testified that she had been trained to be wary if a guest requested the same room he or she had previously rented or incurred substantial local toll charges because of the possibility that the guest was engaged in either prostitution or some type of narcotics activity. Her concerns led her only to mentioning defendant's name and unusual behavior to a police officer on routine patrol. The motel was not directly involved in either the surveillance or search of defendant's room. The search warrant was based on probable cause which was furnished by an examination of items abandoned by defendant; it was not based upon the information provided by the motel regarding the number of telephone calls defendant made and received. We find, therefore, that there is no merit in defendant's claim that the motel employees violated his privacy by telling the police of his unusual telephone usage, thereby rendering the search of his room illegal.

RESTRICTION OF VOIR DIRE
By assignment of error number two, defendant submits that the trial court erred by restricting his voir dire examination of prospective juror Sandra Malcolm. Throughout pre-trial matters, defendant apparently contended that, although he rented and paid for the room, the drugs and paraphernalia found therein actually *1378 belonged to a companion. He contends, therefore, that the court should not have sustained the state's objection to a question by which he was attempting to discover whether or not Ms. Malcolm might find defendant guilty because of his association with someone who committed a criminal act.
Ms. Malcolm testified that she was a travel agent and that occasionally she made reservations for her clients at various motels. Defense counsel then questioned her as follows:
Q Have you ever received any feedback that one of them would have been up tosay two business colleagues travelling for a large concernthat one of them would have been up to something in the room that shocked or offended the other or one maybe didn't know about?
A No. I can't think of anything.
Q Well, in your own experience, can you envision in your own mind a scenario where one of two persons who were together for a particular trip could be up to something or doing something that would catch or shock the other?
The state then objected, alleging that counsel was asking the prospective juror to prejudge the merits of the defense. The court agreed, noting that the question presented a hypothetical situation that closely paralleled the factual circumstances that were to be developed during trial. Defendant objected to the court's ruling, stating his intention to rephrase the question. However, counsel terminated his examination of Ms. Malcolm without attempting to do so. Ms. Malcolm was accepted as a juror without challenge.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. Art. I, § 17. La.Code Crim.P. art. 786 provides that the court, the state, and the defendant shall have the right to examine prospective jurors.
The purpose of voir dire examination is to determine the qualifications of prospective jurors by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Bell, 477 So.2d 759 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La.1986). The defendant should be able to make such inquiries of prospective jurors as will enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. State v. Duplessis, 457 So.2d 604 (La.1984). However, voir dire examination may not encompass unlimited inquiry into all possible prejudices of prospective jurors, nor their opinions on the evidence (or its weight) to be offered at trial, nor hypothetical questions and questions of law which call for any prejudgment of supposed facts. See State v. James, 431 So.2d 399 (La.), cert. denied, 464 U.S. 908, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983).
Although defendant contends that he was attempting to discover whether or not Ms. Malcolm might be inclined to find him guilty by association, the question he propoundedwhether or not she could envision a situation wherein one party shocked another by his conductwas indirect and unlikely to uncover a potential ground for challenge. Nevertheless, the area which defendant sought to explore was one of valid concern. However, defendant chose to abandon his inquiry, rather than rephrase the question in a manner that did not present a hypothetical situation and by which he might obtain the information he sought. The purpose of defendant's voir dire is to challenge jurors whom defendant believes will not approach the verdict in a detached and objective manner. See State v. Jackson, 450 So.2d 621 (La.1984). Defendant did not continue the line of questioning; nor did he challenge Ms. Malcolm either for cause or peremptorily. It is apparent, therefore, that defendant was satisfied with the answers the prospective juror had previously provided.
Whether or not a particular question is essential to full voir dire is best governed by a liberal discretion by the trial judge under the prevailing facts and circumstances, and the disallowance of a proper question *1379 will not automatically create reversible error. State v. Jackson. In reviewing the fairness of the ruling, the entire examination must be considered. Id.
The record reflects that defendant chose to designate only portions of the voir dire for inclusion in the appellate record. Therefore, our review encompasses only the examination of the panel of which Ms. Malcolm was a part. However, we find that defendant was afforded a full and complete examination of the prospective jurors. Although defendant raised a valid concern when he sought to determine whether or not Ms. Malcolm could believe that a party might be shocked at the conduct of a companion, his otherwise complete voir dire did not reveal a ground for the belief that this juror, or any other, might be so inclined. We find, therefore, that the question was not essential to a full voir dire; and its exclusion was not reversible error.

SIMULTANEOUS PEREMPTORY CHALLENGES
By assignment of error number three, defendant submits that the trial court erred by requiring him to exercise his peremptory challenges at the same time as the state. He claims that he was entitled to accept or reject the jurors tendered to him by the state after the state had exercised its challenges.
La.Code Crim.P. art. 788 provides as follows:
A. After the examination provided by Article 786, a prospective juror may be tendered first to the state, which shall accept or challenge him. If the state accepts the prospective juror, he shall be tendered to the defendant, who shall accept or challenge him. When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror. This Article is subject to the provisions of Articles 795 and 796.
B. If the court does not require tendering of jurors, it shall by local rule provide for a system of simultaneous exercise of challenges.
On November 7, 1983, by en banc order, the judges of the Nineteenth Judicial District Court amended the local court rules by adopting Rule 4, Section 2(G). That rule provides that, at the conclusion of the examination of prospective jurors as provided in Article 786, those prospective jurors who have not been excused, pursuant to a challenge for cause, shall be tendered to the State and the defendant(s) for simultaneous exercise of peremptory challenge in writing in a manner to be determined by the Court.
We find, therefore, that defendant's claim has no merit. The trial court properly required the parties to simultaneously exercise peremptory challenges.

DENIAL OF CHALLENGE FOR CAUSE
By assignment of error number four, defendant submits that the trial court erred by denying his challenge for cause of prospective juror Carolyn Lamotte. During the voir dire examination, Ms. Lamotte testified that she was afraid that she might be unable to be fair because her son and niece had had problems with drug use. After defendant moved to challenge her for cause, the court asked Ms. Lamotte if she could put aside her personal experiences and decide whether or not defendant was guilty based upon the evidence, the issue being whether or not he possessed the contraband. She responded that she could. The court then denied the challenge for cause. Defendant later peremptorily challenged her.
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 993 (1986). A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a *1380 whole indicates an abuse of that discretion. Id.
Although Ms. Lamotte initially indicated that she was afraid that she might prejudge defendant because of her own experience, when questioned by defense counsel she stated that she did not think that she would be predisposed to find defendant guilty because of her circumstances; and she further testified that she would not find him guilty only because he associated with persons who used or possessed drugs. Ms. Lamotte testified that she had served on a jury before and was aware of the type of decisions that she would be required to make as a juror. She maintained throughout the examination that she would not want herself on a jury if she were being tried because of the possibility that she would not be fair; however, her responses indicated that she actually believed that she could be a fair juror. After Ms. Lamotte responded that she would be able to put aside her personal experiences and decide whether or not the evidence established that defendant was guilty, the trial court found that her answers indicated that she was sincerely concerned about her own impressions, but that she would be able to sit impartially.
After review of the entire voir dire, we find no error in the trial court's ruling. Ms. Lamotte's responses indicated that she would be able to fairly evaluate the evidence despite her obvious reluctance to serve on the jury. The trial court did not abuse its discretion by denying defendant's challenge for cause.

ADMISSION OF EVIDENCE
By assignments of error five and six, defendant submits that the trial court erred by overruling his objection to state evidence. In assignment of error number five, defendant contends the court erred by permitting Officer Whatley to testify about a common method of packaging cocaine. In assignment of error number six, defendant argues that the court erred by permitting the state to introduce drug paraphernalia found in defendant's room. Defendant objected to the admission of the paraphernalia and the testimony on the grounds that they were irrelevant because he was charged only with possession of cocaine; and that evidence exceeded the scope of the charge because they tended to show possession with intent to distribute cocaine.
These arguments have no merit. All evidence which is relevant to a material issue, necessary to be known to explain a relevant fact, or which supports an inference raised by such a fact is admissible, except as otherwise provided by the law. La.R.S. 15:435; State v. Ludwig, 423 So.2d 1073 (La.1982). Relevance is determined by the purpose for which the evidence is offered. La.R.S. 15:442; State v. West, 419 So.2d 868 (La.1982). It is well settled that a determination of relevance lies within the discretion of the trial judge and will not be disturbed absent a clear showing of abuse of that discretion. Id. We find no error in the court's determination that the evidence was relevant. The possession of equipment commonly used to store and administer cocaine is admissible to prove that the defendant knowingly and intentionally possessed the unlawful substance. See State v. Porter, 344 So.2d 1031, 1034 (La.1977).

REFERENCE TO SUPPRESSED EVIDENCE
By assignment of error number seven, defendant submits that the trial court erred by denying his motion for a mistrial. Defendant contends the prosecutor's reference to a gun, which the court had ruled irrelevant, compromised his right to receive a fair trial.
A handgun was found in defendant's car after his room had been searched and the contraband therein seized and marked. The trial court initially deferred ruling on the admissibility of the pistol, indicating that the gun might be admissible if a foundation could be established. After the evidence established that the gun was found after the arrest, the court found that the pistol was not a part of the res gestae and sustained defendant's objection to it. The following exchange then occurred:
BY THE STATE:
*1381 Let me establish the foundation. Detective Whatley, how many
BY THE COURT:
Wait. I've already sustained the objection.
BY THE STATE:
You said that I could make a foundation to establish the relevancy of that pistol, and that's what I'm going to do at this time.
The court then ordered that the jurors be removed from the courtroom and, out of their presence, defendant moved for a mistrial. The court denied the motion, but offered to admonish the jury to disregard the remark. Defendant rejected the court's offer.
La.Code Crim.P. art. 775 provides, in pertinent part, that "upon motion of a defendant, a mistrial shall be ordered ... when prejudicial conduct [inside] the courtroom makes it impossible for the defendant to obtain a fair trial." The determination as to whether or not a mistrial should be granted under this provision is within the sound discretion of the trial judge, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Smith, 433 So.2d 688 (La.1983). The motion should be granted only where the defendant suffers such substantive prejudice that he has been deprived of any reasonable expectation of a fair trial. Id.
We do not find that the brief reference by the prosecutor to the pistol was so prejudicial as to warrant the drastic remedy of mistrial. The record does not support an inference that the prosecutor referred to the pistol in a calculated ploy to present evidence to the jury that defendant carried a firearm; rather, it appears that the reference was an unguarded slip. We note that the gun was not suppressed as the result of an unconstitutional search and seizure, but was ruled inadmissible because the court found it to be irrelevant. However, even brief references to evidence suppressed by the trial court do not necessarily result in prejudice to the accused. See State v. Smith. See also State v. Nix, 327 So.2d 301 (La.1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976).
Defendant rejected the court's offer to admonish the jury, fearing that the jury might be more likely to recall the statement if the court did so. However, under these circumstances, the admonition by the trial court to disregard the prosecutor's remark would have been sufficient to cure any prejudice defendant might have suffered as a result thereof. We find no error in the denial of defendant's motion for a mistrial.

JURY INSTRUCTIONS
By assignment of error number eight, defendant contends that the trial court erred by instructing the jury on the definition of "dominion or control." He submits that the court should not have defined the terms for the jurors because these concepts are factual issues and, therefore, the instructions exceeded the scope of La.Code Crim.P. art. 802, which requires the court to instruct the jury on the law to be applied.
A person may be in constructive possession of a drug even though it is not in his physical custody if it is subject to his dominion and control. State v. Smith, 257 La. 1109, 245 So.2d 327 (La.1971). A person may be deemed to be in joint possession of a drug which is in the physical custody of a companion if he willfully and knowingly shares with the other the right to control of it. Id.
The term "constructive possession" is a term of legal art, describing the situation in which a person, not in physical possession of a thing, can, nevertheless, be considered to be in legal possession of it. State v. Cann, 319 So.2d 396 (La.1975). Herein, the court instructed the jury that the question of whether or not defendant could control the cocaine found in his room was an issue for the jurors to resolve. Although the question of whether or not defendant had dominion or control over the cocaine found in his room may have turned on a factual determination, the jurors were entitled to know that, as a matter of law, that determination was their own to make.
*1382 See, e.g., State v. Dickinson, 370 So.2d 557 (La.1979). This assignment of error has no merit.
Therefore, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] At the hearing on the motion to suppress, Ms. Soule testified that, during his first stay at the motel, defendant made one hundred forty-three telephone calls between 2:00 p.m. and 12:00 noon the following day. The motel was charged twenty-five cents for each outgoing call, regardless of whether or not the call was answered. Ordinarily, the motel absorbed the cost of calls that lasted under a minute, and billed the guest only for calls that were longer. Ms. Soule indicated that defendant herein was charged $26.03 for the room. Thus, the toll charges (a total of $35.75), actually exceeded the cost of the room.