553 So.2d 873 (1989)
STATE of Louisiana
v.
Peter Hugh TAYLOR.
No. KA 88 1618.
Court of Appeal of Louisiana, First Circuit.
November 15, 1989.
*876 Allen W. Helm, III, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
F. Smith Knobloch, Thibodaux, for defendant and appellantPeter Hugh Taylor.
Before EDWARDS, LANIER and FOIL, JJ.
EDWARDS, Judge.
Peter Hugh Taylor was charged in a two-count bill of information with conspiracy to possess more than four hundred grams of cocaine, in violation of LSA-R.S. 14:26 and 40:967 F(3), and the possession of more than four hundred grams of cocaine, in violation of LSA-R.S. 40:967 F(3). On the day of trial, the state dismissed Count I, the conspiracy charge. A jury convicted defendant as charged on the remaining count. The trial court imposed a sentence of thirty years at hard labor, fifteen years to be served without benefit of probation, parole, or suspension of sentence. Defendant appealed, urging eighteen assignments of error.
Defendant was jointly charged with Juan Jose Sanchez and Gene Ray Howell. Sanchez pled guilty, reserving his right to appeal the denial of a motion to suppress physical evidence and statements. This Court affirmed his conviction. State v. Sanchez, 516 So.2d 415 (La.App. 1st Cir. 1987), writ denied, 523 So.2d 1334 (La. 1988). The record does not reflect the disposition of the charges against Howell.
Defendant and Sanchez were arrested at the Houma City Airport on December 21, 1985. Authorities were summoned to the airport on behalf of Ken and M.C. Perry of Perry Flying Center, the lessors of a Piper Navaho airplane which defendant flew to that airport. The Perrys were concerned because they had determined that the plane was being flown in an unauthorized manner by an unauthorized pilot. After the Perrys recovered possession of the airplane, Ken Perry discovered several boxes of cocaine inside the cargo area. He consented to a search of the plane by local authorities. Approximately four hundred fifty pounds of ninety-two to ninety-four percent pure cocaine was found in the plane.
The airplane, owned by Murphy Foster but managed by the Perrys, had been leased by them to Howell, ostensibly to transport computer parts from New Orleans to Tampa, Florida, for a one-week term beginning December 13, 1985. The terms of the lease required Howell to bring the plane to the Perrys' facility in Patterson, Louisiana, every other day for inspection and maintenance and to purchase all of his fuel from Perry Flying Center. In addition, only Howell was authorized to pilot the aircraft. Howell defaulted on the lease at the beginning of its term by failing to bring the aircraft to the Perrys for inspection. Throughout the week of December 13, the Perrys repeatedly attempted to contact Howell through his wife to ascertain the location of the aircraft and request its return. Both Howell and his wife advised the Perrys that the transport flights had been delayed, but that the plane would be returned soon. Finally, on December 21, 1985 (after the lease term had expired), Mrs. Howell told the Perrys that the plane would be returned by 6:00 p.m. The Perrys planned to file criminal charges if the plane had not been returned by that time.
On that afternoon, as the Perrys were discussing the situation involving the airplane, they overheard a radio transmission *877 in which a pilot, using the call letters of the leased aircraft, requested permission to land an airplane at the Thibodaux airport for refueling. Since Thibodaux is a short flight distance from Patterson and, presumably, the plane would not need refueling for such a short flight, Ken Perry immediately suspected that the pilot did not intend to return the plane to Patterson. Moreover, Perry readily determined that the pilot seeking permission to land was not Howell because he was familiar with Howell's voice and speech patterns and he did not recognize the voice of the person transmitting the request. Perry asked the pilot to confirm the plane's call letters and, after determining that the pilot was in the missing aircraft, he asked to speak to Howell. He was told that Howell was not on board. Perry then identified himself and demanded that the pilot return the airplane to Patterson. The pilot thereafter refused to respond.
The Perrys then contacted several nearby airports, attempting to discover the location of the airplane. They eventually learned that the pilot had landed in Houma and was refueling at the Hammonds Flying Center. After Ken Perry requested that the plane be held until his arrival, an aviation fuel truck blocked its departure. Ken and M.C. Perry flew to Houma from Patterson.
Brian Saunders, an operator in the Houma control tower, had contacted the police department on the Perrys' behalf. Officer Charles Duplantis went to the airport to investigate the complaint of unauthorized use of the aircraft. Just outside the airport, he passed two men, one appearing to be Hispanic and the other a non-Hispanic Caucasian, walking along Highway 24. Officer Duplantis learned from maintenance workers at the airport that two men, one Hispanic and the other a non-Hispanic Caucasion, had deplaned and left the airport on foot, headed toward Highway 24. He drove back to the area where he had passed the men and located the Caucasian, defendant herein. The Hispanic man, Juan Jose Sanchez, returned from the side of a nearby trailer shortly thereafter. After the men confirmed that they had just come from the airport and that they had been on the leased plane, Officer Duplantis conducted a brief pat-down search, advised the men that he was going to take them back to the airport until the matter was settled, and drove them back to the airport.
The Perrys had arrived at the Houma airport by the time Officer Duplantis and the two men returned. Ken Perry identified himself as the owner of the aircraft and demanded the keys from defendant and Sanchez. Defendant initially denied that they had keys to the aircraft. Sanchez later claimed that he had lost them. Ken Perry told Officer Duplantis that the men were lying because the plane was locked and a key was necessary to lock it. When Duplantis ordered defendant to assume a "spread-eagle" position to be searched, Sanchez handed over the key.
After Ken Perry identified the key, Officer Duplantis gave it to him. Perry opened the aircraft cargo door and discovered that auxiliary fuel tanks had been installed. As he opened the door to the airplane he was immediately overcome by the smell of aviation fuel, which had spilled out of the tanks and soaked the carpet in the passenger area of the plane. Perry noted several boxes inside the passenger area and, concerned that an explosion might result because of the fuel leakage if the boxes contained flammable material, he opened a package to determine its contents. Perry dropped the package and told Duplantis he believed the boxes contained cocaine. Defendant and Sanchez were then arrested for the instant offense.
Shortly thereafter, law enforcement officers contacted Judge Baron Bourg of the 32nd Judicial District Court to determine whether it was necessary to obtain a warrant to search the airplane. Judge Bourg spoke to M.C. Perry, who explained the relationship between Murphy Foster, the plane's owner, and Perry Flying Center. Judge Bourg apparently advised the officers that a warrant was not necessary if the Perrys consented to a search. M.C. Perry signed a written consent to search the plane, and cocaine, with a street value *878 in 1985 of approximately $120 million, was discovered on board.

DISCOVERY VIOLATIONS
By assignments of error one and two, defendant contests the trial court's rulings during the hearing on the motion to suppress by which he claims his discovery rights were abridged. In assignment of error number one, defendant submits that the trial court erred by permitting the state to introduce documents and statements that had not been disclosed in response to his discovery request. In assignment of error number two, defendant claims the trial court erred by denying his motion to continue the suppression hearing until the state had complied with discovery. Defendant specifically complains that he was prejudiced by the introduction of a contract between Murphy Foster and the Perrys and by various statements made by defendant and Sanchez.
On the morning the hearing was scheduled to begin, defendant filed a "Motion for Continuance and Enforcement of Discovery," claiming that he had come into possession of documentary evidence from an outside source which had not been disclosed by the state. He sought a continuance of the hearing and a court order to require the state to provide the information requested in his discovery motion. At that time, Allen Helm, the assistant district attorney, told the court that the item, the contract between Murphy Foster and the Perrys, was not in his possession and that he did not intend to introduce it. Helm noted, however, that the document had been available from the Perrys through regular compulsory process channels and that the Perrys, who were scheduled to testify at the hearing, might have brought the document to court, although he had not requested them to do so. The court denied defendant's motions.
Thereafter, during his testimony at the suppression hearing, Ken Perry produced a copy of the contract. After Perry testified that he did not bring the document at the request of a law enforcement officer but for his own informational purposes, the state moved to introduce the item. Over defendant's objection, the court permitted its introduction. Subsequently, Perry testified about the radio transmission he overheard in which the unidentified pilot requested permission to land at the Thibodaux airport. Defendant again objected on the grounds that this statement had not been disclosed to him; and the court found the statement admissible for the suppression hearing. Over defendant's objection, Perry also testified that, after he questioned defendant and Sanchez about their presence in the airplane, defendant told him that Perry needed to speak to Ray Howell. Finally, Officer Duplantis testified that, as he initially questioned the two men along the highway, they told him that they had had permission to fly the plane but there had been some type of disagreement over the rental contract. Defendant contends that the contract and statements should have been excluded and that he was prejudiced by the court's rulings permitting the state to introduce them. However, the only manner in which defendant claims to have been prejudiced by the introduction of the evidence is the reliance of this court on the statement of the two men that they had recently come from the airport to "intensify Officer Duplantis' suspicions" that the men were involved in the unauthorized use of the aircraft. See State v. Sanchez, 516 So.2d at 418.
Defendant contends that the sanctions for the state's failure to comply with discovery procedures are available for use at pretrial hearings. Although it is true that the sanctions authorized by LSA-C. Cr.P. art. 729.5 are not specifically limited to evidence offered at trial, there are several difficulties attendant upon the application of sanctions to evidence which the state failed to disclose by the time of a hearing on a pretrial matter. Of particular note, at the time of a pretrial hearing the state might not have determined that it intends to introduce the evidence. Generally, the accused is entitled to discover only exculpatory evidence or inculpatory evidence intended for trial; therefore, if the state does not elect to introduce evidence in *879 its possession, the evidence is not discoverable unless it is exculpatory. Under defendant's reasoning, the state would be required to decide possibly months before trial what evidence it intends to introduce. Moreover, pretrial proceedings concern legal, rather than factual, issues. Therefore, the application of discovery sanctions to pretrial proceedings is generally impractical and unnecessary.
In any event, we note that, despite defendant's complaint of the state's failure to provide a copy of the agreement between Foster and the Perrys, he readily admitted at the hearing and in his written motion that he was, in fact, in possession of a copy of the contract, which he received from the attorney representing Howell. Since he was already in possession of the document, defendant cannot claim to have been prejudiced by the state's failure to disclose it. See State v. Cass, 356 So.2d 936, 945 (La. 1977).
Defendant further contends he was prejudiced by the state's failure to disclose the radio transmission overheard by the Perrys and defendant's response to questioning by Ken Perry. The defendant was not entitled to obtain the contents of oral statements made by him to a private citizen, even if the state intended to introduce them at the trial of this matter. See State v. Joseph, 379 So.2d 1076, 1077 (La.1980). Moreover, defendant does not set forth any manner in which he was prejudiced by the state's failure to disclose them before the hearing.
Finally, defendant submits that he was prejudiced by the state's failure to provide notice of his statements to Officer Duplantis when he was initially apprehended outside the airport on Highway 24 because this Court relied on the undisclosed statements in determining the legality of the initial stop. However, the admission by Sanchez and defendant that they had just walked away from the airport was only one factor considered by this Court in the appeal of defendant's accomplice. Moreover, defendant also appealed the legality of the initial stop in his third assignment of error, and his arguments are considered in more depth under that assignment of error.
Defendant also complains that the trial court erred by denying his motion to continue the hearing on the motion to suppress until the state had complied with discovery procedures. Defendant's argument is based on his complaint that the state failed to provide a copy of the contract between Foster and the Perrys before the suppression hearing. However, as previously noted, defendant admitted that he had a copy of that document before the hearing, albeit a copy obtained from Howell's attorney. Moreover, at the time of the court's ruling, the state notified the court that it did not have possession of the document and did not intend to introduce it at the hearing. Thus, at that point, the document was not discoverable. Accordingly, we find no merit to defendant's complaint that his discovery rights were abridged by the court's ruling denying his motion for a continuance of the hearing.

DENIAL OF MOTION TO SUPPRESS
In assignment of error number three, defendant submits that the trial court erred by denying his motion to suppress. He sets forth five separate grounds for this complaint.

Investigatory Stop
By assignment of error number three a, defendant submits that the trial court erred by determining that defendant was not arrested until after the discovery of contraband on board the aircraft. By assignment of error number three b, defendant contends that the trial court erred by finding that the initial stop by Officer Duplantis did not constitute a warrantless arrest.
Defendant claims the court erred by disregarding the state's stipulation (in its discovery response) that the arrest occurred on Highway 24, when Officer Duplantis apprehended defendant and Sanchez and returned them to the airport to determine whether or not an unauthorized use of the aircraft had occurred. Defendant further submits that this Court (in reviewing Sanchez's appeal) and the trial court erred in *880 finding that Officer Duplantis's actions on Highway 24 were simply an investigatory stop.
Initially, we note that defendant's claim the state "stipulated" that an arrest occurred on Highway 24 in its response to defendant's discovery motion is totally without merit. The determination of when an arrest has occurred is a legal determination for the trial court, subject to appellate review.
In reviewing defendant's motion to suppress, this Court is not limited to evidence introduced at the hearing on the motion to suppress but may consider pertinent evidence introduced at other proceedings, including the trial of this matter. State v. Johnson, 484 So.2d 861, 864 (La. App. 1st Cir.1986). Although our review of the issues presented in Sanchez does not absolutely preclude a different result in this case, judicial efficiency demands that this Court accord great deference to its previous determinations in such an intimately related matter, unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result. See, e.g., State v. Johnson, 438 So.2d 1091, 1104-1105 (La. 1983); State v. Jones, 526 So.2d 1374, 1376 (La.App. 1st Cir. 1988). We have carefully reviewed the transcript of the hearing on the motion to suppress in light of the evidence adduced at trial, and we are persuaded that the result reached by this Court in Sanchez is correct.
Defendant contends that Officer Duplantis did not have sufficient information to make an investigatory stop at the time of the initial apprehension but was simply playing a "hunch" at the time of the stop. Defendant further claims that the facts known to Officer Duplantis were not based on a reasonable suspicion that a crime had been committed, because the officer had not spoken to Brian Saunders or the Perrys before he detained defendant.
"A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." LSA-C.Cr.P. art. 215.1. Reasonable cause for an investigatory detention is something less than probable cause, and cause must be determined under the facts of each case by considering whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The totality of circumstances must be considered in determining whether reasonable cause exists. In order to assess the reasonableness of an officer's conduct, it is necessary to balance the need to search or to seize against the harm of invasion. State v. Payne, 489 So.2d 1289, 1291-1292 (La.App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986).
Officer Duplantis was acting upon information he had received through official channels that an offense, the unauthorized use of the airplane, had occurred; and his purpose in detaining defendant and Sanchez was simply to investigate that complaint. Observations and reports of fellow peace officers engaged in related investigations clearly provide a reliable basis for an officer to make an investigatory stop. See State v. Linkletter, 345 So.2d 452, 456 (La.1977), cert. denied, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978). The officer had received a report of an unauthorized use of the aircraft. He had obtained a description of the persons who had been seen leaving the plane and their direction of travel. He found two persons matching the description in the location described who admitted that they had been on the airplane that was involved in a dispute over their right to be on board. Officer Duplantis testified that he brought defendant and Sanchez back to the site of the complaint "to get the situation resolved."
We find, therefore, that Officer Duplantis had reasonable grounds to suspect that defendant might have been involved in criminal behavior, and that his actions constituted an investigatory stop. Thereafter, he pursued a means of investigation that was likely to confirm or dispel suspicions quickly, during which time it was necessary to detain defendant. See United *881 States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
Defendant further contends that his arrest was illegal because Officer Duplantis was outside of his territorial jurisdiction at the time of the arrest. Officer Duplantis testified that the Houma City Airport was within the city limits of Houma. Although defendant and Sanchez were approximately one-half mile outside of the city limits at the time Officer Duplantis initially stopped them, we have previously found that the arrest took place beside the airplane at the Houma City Airport and, therefore, was within the territorial jurisdiction of Officer Duplantis.
Accordingly, we find that the trial court did not err in denying defendant's motion to suppress urged on these grounds. These assignments of error have no merit.

Introduction of Evidence
By assignment of error three c, defendant submits that the trial court erred by overruling his objection to the introduction of documentary evidence at the hearing on the motion to suppress because the state failed to disclose the evidence prior to the hearing. Specifically, defendant complains of the trial court's rulings permitting the state to introduce the lease agreement between the Perrys and Poster, the rental agreement between Perry and Howell, and the Consent to Search form signed by M.C. Perry. In addition, defendant complains of the trial court's rulings permitting the state to introduce inculpatory statements made by defendant to Ken Perry and Officer Duplantis.
Although defendant claims that the court should have imposed the sanctions of LSA-C.Cr.P. art. 729.5, he does not set forth any manner in which he might have been prejudiced by the admission of this evidence. Moreover, we have previously found no merit to defendant's claim that his discovery rights were violated by the introduction of the statements to Perry and Duplantis and the rental agreement between Foster and the Perrys. Accordingly, we find no merit to this assignment of error.

Introduction of Documentary Evidence and Statements
In assignment of error three d, defendant complains that the trial court erred by denying his motion to suppress physical evidence. In assignment of error three e, defendant contends that the trial court erred in finding that the statements disclosed by the state were admissible.
Defendant claims this evidence was not admissible because his initial detention was an invalid warrantless arrest. Having previously found no merit to defendant's claim that his arrest was invalid, we find no error in the introduction of evidence discovered as a result thereof.

ERRORS ARISING DURING TRIAL
In assignment of error number four, defendant sets forth several errors he claims the court committed during his trial.

Objection of Inculpatory Statements
By assignment of error number four a, defendant submits that the trial court erred by overruling his objection to inculpatory statements introduced during the trial in violation of a protective order. By assignment of error number four b, he contends the court erred by denying his motion for a mistrial urged after a state witness testified that defendant and Sanchez admitted that they had been on the airplane.
Prior to trial, defendant filed a "Motion for a Protective Order" in which he sought a ruling prohibiting the state from introducing inculpatory statements other than those of which he had received pretrial notice. The state advised the court that it did not intend to introduce statements other than those of which defendant had received notice. The court then found defendant's motion moot. During the trial, defendant objected to the introduction of various statements attributed either to him or to Sanchez. His first objection was directed to Ken Perry's testimony concerning the radio transmission he overheard. At that time, defendant objected only on the grounds that no foundation had been established to support Perry's claim that he *882 would have recognized Howell's voice if the pilot transmitting the report from the missing aircraft had been Howell. The court overruled defendant's objection, finding that the question was one of the weight, rather than the admissibility, of the evidence. Thereafter, the state asked Mr. Perry if he recognized defendant's voice as the same as the voice he overheard on the radio transmission. Defendant objected on two grounds: the lack of foundation for the voice recognition and the state's failure to disclose the statements. The court sustained defendant's objection, noting parenthetically that the question did not seek to introduce a statement of the accused.
Officer Duplantis testified that he stopped defendant and Sanchez as they were walking down Highway 24, and, in response to questioning, they told him that they were the men driving the airplane at the Hammonds facility. Defendant did not object to this testimony. Subsequently, in response to the state's question concerning whether any weapons were seized in connection with this case, Officer Duplantis related that Sanchez had told him that he had hidden a gun behind the trailer shortly before his apprehension. Defendant objected; and the court sustained the objection. Defendant did not request an admonition.
Thereafter, the state asked Officer Duplantis if he attempted to retrieve the key to the airplane from either defendant or Sanchez. Officer Duplantis responded as follows:
Yes, sir, I did. Mr. Perry advised me that the plane had to be locked with a key. It couldn't be just locked and closed, so I advised Mr. Taylor to put his hands on the, I think, the left wing, and I was going to search him more thoroughly for the key, being he told me that he was driving the plane.
Defendant immediately objected and moved for a mistrial. At a hearing out of the presence of the jury, he claimed that the state intentionally solicited the unresponsive statement. The court found, however, that the statement had not been elicited intentionally and denied the motion for a mistrial, offering instead to admonish the jury to disregard the statement. Defendant now contends that the statement was chargeable to the prosecution because it was in direct response to a question from the prosecutor.
Initially, we note that defendant's claim that the statement was introduced in violation of the court's protective order has no merit. The court did not grant defendant's motion; rather, it found the motion was moot because of the state's assurance that it did not intend to introduce statements other than those previously disclosed.
Moreover, defendant's claim that the statement was chargeable to the prosecution because it was in direct response to questioning by the state has no merit. The state asked Officer Duplantis only if he had attempted to retrieve the key to the airplane from either defendant or Sanchez.
Mistrial is a drastic remedy and, unless mandatory, is committed to the sound discretion of the trial judge. LSA-C.Cr.P. art. 770; State v. Narcisse, 426 So.2d 118, 133 (La.), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). It is warranted if substantial prejudice results which would deprive defendant of a fair trial. The trial judge is granted discretion to determine whether an admonition is adequate to assure a fair trial when prejudicial conduct does not fall within the mandatory mistrial provision of LSA-C.Cr.P. art. 770. The ruling will not be disturbed on review absent an abuse of discretion. State v. Narcisse, 426 So.2d at 133.
Since the remarks of which defendant complains were not made by a judge, district attorney, or court official, they are not covered by the mandatory mistrial provisions of LSA-C.Cr.P. art. 770. The form of the questions does not indicate bad faith on the part of the state. See State v. Joseph, 437 So.2d 280, 283 (La. 1983). Accordingly, we find no abuse of discretion in the trial court's ruling denying defendant's motion for a mistrial.

Introduction of Passport and Pilot's License
By assignment of error number four c, defendant submits that the trial court erred *883 by failing to sustain his objection to testimony concerning the existence of and seizure of defendant's passport and pilot's license. By assignment of error number four d, defendant contends the trial court erred by denying his motion for a mistrial urged after the state introduced evidence of the passport and pilot's license. By assignment of error number four e, defendant argues that the trial court erred by failing to grant his motion for a mistrial urged after the state presented evidence that defendant's passport had been returned to him after he was released from jail.
Defendant's opening statement was not transcribed. However, he argues that, during his opening statement, he told the jury that the state would not be able to prove that he had been in the airplane. Thereafter, the state presented testimony that defendant's passport had been discovered in a bag in a wing of the airplane, irreparably destroying his defense. Defendant claims the testimony concerning his passport and pilot's license was not admissible on three grounds: 1) the state failed to provide pretrial discovery of the items; 2) the state violated the "best evidence" rule by presenting testimony concerning the items, rather than the items themselves; and 3) the state failed to mention either item in its opening argument.
Defendant apparently contends that the state released defendant's passport and pilot's license to him in order to keep from having to disclose its intent to offer the items or evidence concerning them into evidence, and that his defense strategy was irreparably destroyed because he had no knowledge of the state's ability to establish that he had ever been in the airplane. In light of defendant's statements to Detective Null that he had been in the airplane, of which defendant received proper pretrial notice, defendant's complaint that the state would have been otherwise unable to establish his presence in the plane is misleading.
Moreover, defendant's passport and pilot's license were returned to him upon his release from the Terrebonne Parish Jail after he was released on bond. Therefore, neither object was discoverable under LSA-C.Cr.P. art. 718, which requires disclosure only of documents and tangible items that are "within the possession, custody, or control of the state...." Similarly, since the items were in defendant's possession, the state's failure to produce the items themselves as the "best evidence" is understandable. They were not within the state's control. See LSA-R.S. 15:436. Although defendant also contends that the testimony concerning his passport and pilot's license was beyond the scope of the state's opening argument, defendant failed to designate the state's opening remarks for our review. We note, however, that the state is required only to set forth in general terms the nature of the evidence by which it expects to prove the charge. See LSA-C.Cr.P. art. 766. Accordingly, we find no merit to defendant's objection to the introduction of evidence concerning his passport and pilot's license. Further, we find no error in the trial court's denial of a mistrial based on the introduction concerning this evidence.

Denial of Motion to Suppress
By assignment of error number four f, defendant submits that the trial court should not have permitted the state to introduce the evidence that was the subject of his motion to suppress. We have previously found no merit to defendant's claims that the evidence should have been suppressed. Accordingly, we find no merit to this assignment of error.

Prejudicial Remarks
By assignment of error number four g, defendant contends the court erred by denying his motion for a mistrial urged after the state made several prejudicial comments during its closing statement. During his rebuttal address, Assistant District Attorney Allen Helm included the following remarks:
Legal educations are worthless, if you don't have the integrity and fortitude and the sense of fair play that goes with the responsibility that that minor office confers.

*884 I would submit and offer up Mr. Knobloch as the best evidence I have ever seen of the fact that God did in fact endow men with speech that they might deceive one another.
You are going to put him in jail for fifteen (15) years, no probation, no suspension of sentence. He gets good time. He didn't tell you that, did he. He gets three (3) days for every one (1) he serves as good time, so he will get out in five (5) years anyway. But he didn't tell you that, because he doesn't want you to know the whole truth, does he.
* * * * * *
Did you notice how it is only me and other agents of the State who are human and susceptible to error? He (Knobloch) is the man that was withdrawing his own questions for fear of what the witnesses would say. But, you know, he is not subject to the same fallibilities as Lieutenant Null. He wants to find fault with them.
Thereafter, at a hearing out of the presence of the jury, defendant objected to the remarks and moved for a mistrial. The court denied defendant's motion.
LSA-C.Cr.P. art. 774 provides that the closing argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact to be drawn from the evidence, and to the law applicable to the case. Comments by the prosecutor about counsel for defendant have no place in a criminal proceeding. See State v. Craddock, 435 So.2d 1110, 1123 (La.App. 1st Cir.1983). The statements quoted above are injudicious, unprofessional, and clearly improper. Nevertheless, this Court will not reverse a conviction because of improper closing arguments unless we are thoroughly convinced that the remarks influenced the jury or contributed to the verdict. State v. Craddock, 435 So.2d at 1123. Herein, we are not convinced that the state's objectionable remarks influenced the jury's verdict. Accordingly, we find no error in the denial of defendant's motion for a mistrial.

DENIAL OF POST-VERDICT JUDGMENT OF ACQUITTAL
By assignment of error number five, defendant contends that his conviction must be reversed because the bill of information charges him with an offense which occurred on December 22, 1985; and, on that date, he was incarcerated in the Terrebonne Parish jail, having been arrested the preceding day on the instant charges. Defendant did not raise this objection before the trial.
Where an accused has been fairly informed of the charge against him by the indictment and has not been prejudiced by surprise or lack of notice, the technical sufficiency of the indictment may not be questioned after conviction where no objection was raised to it prior to the verdict and where, without unfairness, the accused may be protected against further prosecution for any offense or offenses charged by it through examination of the pleadings and the evidence in the instant prosecution. State v. James, 305 So.2d 514, 516-517 (La.1974). The date or time of the commission of the offense need not be alleged in the indictment unless the date or time is essential to the offense. LSA-C. Cr.P. art. 468. Where time is not the essence, the time stated in the indictment is immaterial as to the exact date so long as it precedes the date the indictment was returned. State v. Bourgeois, 278 So.2d 501, 502 (La.1973). Accordingly, this assignment of error has no merit.

MOTION FOR A NEW TRIAL
In assignment of error number six, defendant submits that the trial court erred by failing to order scientific testing he requested for use at his hearing on the motion for new trial. In assignment of error number seven, defendant submits that the trial court erred by denying his motion for a new trial.
After the trial, defendant sought scientific testing of the passport and travel bag to determine if he could obtain fingerprint evidence to impeach the testimony of police officers who testified at trial that his passport had been found in the wing of the *885 airplane. In his motion, defendant alleged that deputies from the Lafourche Parish Sheriff's office had agreed to conduct the tests if counsel obtained a court order. Defendant further claimed that he needed fingerprint cards of Detective Null and Officer Duplantis in order to conduct the fingerprint comparisons. The trial court denied defendant's motion. Defendant now complains that, because of the court's ruling, he was unable to obtain new evidence which would have supported his motion for a new trial on the grounds of newly discovered evidence.
Although defendant may have been unaware that the state found his passport and pilot's license in the airplane, those items had been in defendant's possession for several months at the time of trial; and, therefore, those items were not "newly discovered" within the purview of LSA-C.Cr.P. art. 851. Defendant learned of the importance of the items during the proceeding. LSA-C.Cr.P. art. 851(3) authorizes a new trial only when evidence is available that was not discovered before or during the trial. Moreover, a defendant must show four generally recognized requisites in order to obtain a new trial based on the discovery of new evidence: 1) the evidence must have been discovered since the trial; 2) the failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; 3) it must be material to the issues at the trial; and 4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Prudholm, 446 So.2d 729, 735 (La. 1984). The test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result from the verdict reached. State v. Molinario, 400 So.2d 596, 599 (La.1981). The trial judge is accorded considerable latitude in evaluating the reliability of evidence and its potential impact on the verdict, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Molinario, 400 So.2d at 599.
Herein, defendant sought to impeach the testimony of Detective Null that he found defendant's passport in a small black bag in the wing compartment of the airplane through the use of fingerprint evidence. The court's ruling prevented defendant from obtaining analysis of the fingerprints on the bag, which had been in defendant's possession since his release from jail approximately one month after his arrest. Admittedly, Detective Null's testimony seems to contradict Officer Duplantis's testimony that he took a small black bag from defendant when he apprehended him on Highway 24, since apparently only one small black bag was recovered by the state. However, defendant's claim that, without the discovery of his passport in the airplane, the state had no evidence that he had been on the airplane is without foundation. Detective Null testified at the trial that defendant told him he flew the airplane from Covington to Houma. Accordingly, the jury was provided other evidence upon which it could have found that defendant had been in the airplane. Thus, the court's conclusion that the evidence defendant sought to produce would not have affected the verdict and the denial of defendant's motion to appoint investigators to uncover that information was not an abuse of discretion. Therefore, we find no error in the denial of defendant's motion for a new trial.

EXCESSIVE SENTENCE
By assignment of error number eight, defendant submits that the trial court imposed an excessive sentence. Defendant claims his sentence is excessive in comparison to the sentence received by his co-defendant, Sanchez, who received the minimum mandatory sentence of fifteen years for the possession of cocaine and a concurrent term of seven and one-half years for the charge of conspiracy to possess more than 400 grams of cocaine. Defendant was sentenced to serve thirty years at hard labor, fifteen years without benefit of probation, parole or suspension of sentence.
In imposing sentence, the trial court specifically noted that it had not imposed sentence upon Sanchez. The court further *886 noted that the quantity of cocaine involved, in the instant case, 400 pounds or more, greatly exceeded the highest amount provided for by the statute, 400 grams. The court concluded that, given his involvement in an airplane which had been refitted to extend greatly its flying range, defendant was not an innocent participant, but had knowingly engaged in the transportation of cocaine for profit, with the attendant risks.
The fact that other defendants in a case receive lighter sentences is inconsequential. State v. Quimby, 419 So.2d 951, 962 (La.1982). A judge is not required to treat co-defendants equally in sentencing, and a trial judge may exercise discretion according to individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829, 831 (La.1981); State v. Merchant, 490 So.2d 336, 342 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La. 1986).
Disparity in sentences of co-defendants with similar backgrounds, charged with similar participation in identical crimes, is merely one factor to be considered by the reviewing court, along with all other appropriate considerations, when there is no apparently reasonable basis in the record for the disparity. State v. Phillips, 448 So.2d 235, 237-238 (La.App. 1st Cir.1984). Herein, the court specifically stated that it believed defendant to be clearly in need of custodial treatment. The court obviously found that defendant's active, knowing participation in the transportation and delivery of such a large quantity of cocaine demanded a substantial sentence. The trial court has wide discretion in the imposition of sentence and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Wardlow, 448 So.2d 257, 259 (La.App. 1st Cir.1984). We find no abuse of discretion herein.
For the above reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.